UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MOHAMMAD NABHANI,

              Petitioner,

v.

KEVIN RAYCRAFT et al.,

              Respondents.

_____/

Case No. 1:26-cv-314

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1). For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of Iran. (Pet., ECF No. 1, PageID.6; Suriano Decl. ¶ 4, ECF No. 4-1, PageID.58). Petitioner entered the United States in 2003 at an unknown location without inspection. (Pet., ECF No. 1, PageID.6; Suriano Decl. ¶ 4, ECF No. 4-1, PageID.58). Petitioner subsequently filed an application for asylum, which was denied by an immigration judge on July 7, 2006, and Petitioner was ordered removed. (Pet., ECF No. 1, PageID.6; Suriano Decl. ¶¶ 5–7, ECF No. 4-1, PageID.58–59). Petitioner's appeal was unsuccessful and the order became final on March 30, 2009. (Pet., ECF No. 1, PageID.6; Suriano Decl. ¶ 8, ECF No. 4-1, PageID.59).

Petitioner was not removed to Iran immediately following the final order of removal.  (Pet., ECF No. 1, PageID.6).  Accordingly, Petitioner was placed on an order of supervision on October 22, 2009.  (*Id.*, PageID.7).  In 2011, 2012, and 2021, the Iranian Consulate denied ICE's requests for travel documents for Petitioner.  (Suriano Decl. ¶¶ 12–13, 17, ECF No. 4-1, PageID.59–60).

On July 3, 2025, ICE agents arrested Petitioner.  (Pet., ECF No. 1, PageID.7; Suriano Decl. ¶ 18, ECF No. 4-1, PageID.60).  On September 29, 2025, ICE Headquarters indicated that it "has identified Nabhani for a third country removal and [is] working to schedule Nabhani for removal to a third country."  (Suriano Decl. ¶19, ECF No. 4-1, PageID.60).

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, among other things, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner.  (Pet., ECF No. 1, PageID.21–22).  In an order entered on January 30, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 3).  Respondents filed their response (ECF No. 4) on February 4, 2026, and Petitioner filed his reply (ECF No. 5) on February 5, 2026.

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001);  *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

**DISCUSSION**

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). 8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed. 533 U.S. at 682. In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699. Therefore, the Court concluded that for post-removal-order detention to be authorized by the statute, the removal itself must be reasonably foreseeable. *Id.* The Court indicated that this inquiry would vary from case to case and that there was no specific point in time at which the detention became constitutionally impermissible. *Id.* Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701. Even after six months

3

has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.* Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has pointed to the fact that respondents have repeatedly tried—and failed—to obtain travel documents for Petitioner. (ECF No. 5, PageID.64; Suriano Decl. ¶¶12–17, ECF No. 4-1, PageID.59–PageID.60). Even assuming for the sake of argument that such evidence is sufficient to allow the petitioner to satisfy his burden under *Zadvydas*, the government has responded by showing that ICE Headquarters have identified a third country that is willing to accept Petitioner and by stating, through an affidavit, that the government is engaged in ongoing talks with that country to arrange for the removal. (Suriano Decl. ¶19,  ECF No. 4-1, PageID.60) Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

4

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* forbids.   "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701.   Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation.  An immigration official has testified that the government remains in active discussions with a third country to coordinate Petitioner's removal.  Although nearly six months have passed since ICE Headquarters provided that update, such a length of time is not unreasonably long for negotiating and coordinating removal to a third country.  *See Abdalla*, 2017 WL 345731, at *4 (finding continued detention reasonable where the Government anticipated progress in the near future and no country had declined repatriation).  At this point, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future.  Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

**CONCLUSION**

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:   April 7, 2026                              /s/ Robert J. Jonker
                                                    Robert J. Jonker
                                                    United States District Judge

6